Stuart Kagen (CA Bar No. 212017)
Russell Bogart (*pro hac vice application forthcoming*)
**KAGEN, CASPERSEN & BOGART PLLC**
551 Madison Ave., 12th Fl.
New York, NY 10022
Telephone: (212) 880-2045
Facsimile: (646) 304-7879
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN ALEXANDER, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>REBECCA MARTINEZ, HERE COMES THE BRIDE AND GROOM, and John Does 1-10.<br>Defendants. | Case No. '26CV6439 RSH MMP<br><br>**COMPLAINT**<br><br>[Demand for Jury Trial] |

## COMPLAINT

Plaintiff Justin Alexander, Inc. (hereinafter "Justin" or Plaintiff), by its undersigned counsel, hereby files this Complaint for trademark counterfeiting, trademark infringement, and related claims against Rebecca Martinez ("Martinez") and Here Comes the Bride and Groom ("HCTB," with Martinez, as the "HCTB Defendants"), along with John Does 1-10 ("Does" combined with the HCTB Defendants as "Defendants") as follows:

## PRELIMINARY STATEMENT

1. Justin is a well-established wedding dress designer facing significant harm from domestic bridal boutiques passing off low-quality counterfeit merchandise as its authentic gowns. This practice harms the brand, authorized retail partners, and consumers.

2. A bride ("JG") reported to Justin that HCTB sold her a low-quality counterfeit gown ("Counterfeit Gown"). HCTB originally showed JG an authentic sample gown with the Justin Alexander labels intact and accepted payment of $2,385 with the promise of sourcing an authentic dress from Justin Alexander.

3. Eight months later, and shortly before her wedding day, HCTB delivered a low-quality imitation to JG. Because the HCTB Defendants at all times passed off the Counterfeit Dress as an authentic Justin gown, the confused bride complained to Justin about the gown's quality. Justin inspected the garment and confirmed it had inferior materials, construction, and labeling.

4. This is not the only Counterfeit Dress sold by the HCTB Defendants. Rather, other customers have complained about the quality of their dresses bought from HCTB even though Justin did not supply those dresses to HCTB.

5. On May 27, 2026, Justin sent a cease and desist letter to the HCTB Defendants. On June 12, 2026, Justin's counsel sent a letter warning of HCTB's liability for trademark infringement and counterfeiting.

6. Nevertheless, the HCTB Defendants have continued to willfully infringe Justin's trademarks in two significant ways despite receiving these warnings.

7. *First*, HCTB continues to display sample Justin gowns in its bridal store while misrepresenting to brides that HCTB can source the authentic gowns in their size from Justin. On this basis, Justin alleges that the HCTB Defendants have continued to sell counterfeit Justin dresses sourced from unauthorized third parties.

8. *Second,* HCTB displayed at least two of Justin's top dresses in its store with Justin's labels removed from the dresses. HCTB misrepresented to brides that Justin's dresses were HCTB's

white-label dresses (the "Passed Off Dresses"). HCTB offered the Passed Off Dresses at a price significantly higher than Justin's recommended sale price for boutique stores.

9. The HCTB Defendants have refused to reveal the identity of their suppliers and manufacturers (John Doe Defendants) or reveal the volume of Counterfeit or Passed Off Dresses sold.

10. Justin Alexander brings this case to enjoin the HCTB Defendants and John Doe Defendants from perpetrating these unlawful practices and for monetary damages.

## JURISDICTION AND VENUE

11. This is an action for trademark infringement and counterfeiting of Plaintiff's federally registered trademarks in violation of Section 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)), and related state and common law claims.

12. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; under 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks; under 28 U.S.C. § 1338(b), as it involves unfair competition related to a claim under trademark laws; under 28 U.S.C. § 1331 as it involves a federal question; and under 28 U.S.C. § 1367(a) for the claims that arise under California law because they are substantially related to the claims that arise under the laws of the United States. Furthermore, this Court has pendent jurisdiction because both the state and federal claims are derived from a common nucleus of operating facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

13. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)-(c) and/or 28 U.S.C. §1400(a). A substantial part of the acts of infringement complained of herein occur or have occurred in this District and the HCTB Defendants reside in this District.

14. This Court has personal jurisdiction over the HCTB Defendants because HCTB maintains offices within the District and sells infringing products from its store found in this District. This Court has jurisdiction over the Doe Defendants because they delivered infringing products to the HCTB Defendants in this District and conspired with the HCTB Defendants to manufacture, source, sell, and induce the sale of infringing products.

**PARTIES**

15. Justin Alexander is a New Jersey Corporation that maintains its principal place of business at 11 Edison Place, Springfield, NJ 07081.

16. Plaintiff is informed and believes and thereon alleges that Here Comes the Bride & Groom Bridal Boutique ("HCTB") (*see* https://herecomesthebrideandgroom.com/) is a sole proprietorship operated by Martinez at 3320 Fourth Avenue, San Diego, CA 92103. Plaintiff will amend the caption to identify the proper corporate entity, if any, that operates HCTB upon learning of the same in discovery.

17. Plaintiff is informed and believes that Rebecca Martinez is an individual residing in California and manages HCTB's bridal store located at 3320 Fourth Avenue, San Diego, CA 92103.

18. Plaintiff is informed and believes that Does 1 through 3, inclusive, are manufacturers of counterfeit dresses, which Defendants have manufactured and supplied to HCTB and other bridal stores directly or through third parties without Plaintiff's knowledge and consent or have contributed to said infringement. The true names, whether corporate, individual or otherwise of

Defendants Does 1-3, inclusive, are presently unknown to Plaintiff, which therefore sues Defendants by fictitious names and will seek leave to amend this complaint to show their true names and capacities when the same have been ascertained.

19. Defendants Does 4 through 10, inclusive, are other parties not yet identified who have infringed Plaintiff's trademarks, have contributed to the infringement of Plaintiff's trademarks, or have engaged in one or more of the wrongful practices alleged herein including by soliciting factories to manufacture the counterfeit dresses and solicited stores to sell the counterfeit dresses and or are involved in the shipment of the counterfeit dresses. The true names, whether corporate, individual or otherwise of Defendants Does 4-10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by fictitious names and will seek leave to amend this complaint to show their true names and capacities when the same have been ascertained.

20. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting with the scope of such agency, affiliation, alter-ego relationship and or employment and actively participated in or subsequently ratified and adopted, or both, each all of the facts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## FACTUAL BACKGROUND

### JUSTIN ALEXANDER BRAND

21. Justin Alexander is in the business of, *inter alia*, designing and selling bridal wear and other products manufactured, marketed or distributed by Justin Alexander or its affiliates or

designees or sublicensees. Justin Alexander is a contemporary designer and manufacturer of mid-to-high-end bridal gowns and accessories.

22. Justin Alexander is one of the largest manufacturers and wholesalers of bridal gowns and formal wear throughout the world. Justin Alexander offers the marquee collection *Justin Alexander*, in addition to the noteworthy designs of *Justin Alexander Signature, Lillian West, Sincerity Bridal* and *Adore by Justin Alexander*. Justin Alexander has obtained licenses to produce and trade dresses under the names *Viktor & Rolf Mariage* and *Savannah Miller*.

23. Before starting Justin Alexander, its affiliates and predecessors in the early 1990s, Larry Warshaw had worked in family-operated wedding veil and dress manufacturing companies since the 1970s. The Warshaw family debuted on the bridal fashion scene as T&G Bridal in Brooklyn in 1946. Justin Warshaw has succeeded Larry Warshaw as the President of Justin Alexander. Justin Alexander, its affiliates and predecessors, have enjoyed decades of success in the wedding business due to their sale of high quality dresses.

24. Since around 2005, Justin has operated a website where it promotes genuine Justin Alexander products to consumers at justinalexander.com.

25. Presently, Justin sells products in approximately 700 retail stores throughout the United States and an added 1,200 retail stores throughout the world.

26. In August 2011, Justin obtained the United States Registration for the word mark JUSTIN ALEXANDER for use with wedding dresses and wedding gowns. *See* Trademark Registration Number 4018784, a copy of which is attached hereto as **Exhibit 1**. The Registration indicates that Justin has used the mark JUSTIN ALEXANDER in commerce in the bridal industry since 2001.

27. In August 2011, Justin also obtained the United States Registration for the word mark SINCERITY for use with wedding dresses and wedding gowns. *See* Trademark Registration

Number 4011847, a copy of which is attached hereto as **Exhibit 2**. The Registration indicates that Justin has used the mark SINCERITY in commerce in the bridal industry since 1997.

28. In 2013, Justin obtained the United States Registration for the word mark LILLIAN WEST for use with wedding gowns. *See* Trademark Registration Number 4417935, a copy of which is attached hereto as **Exhibit 3**. The JUSTIN ALEXANDER, SINCERITY and LILLIAN WEST trademarks collectively are referred to as "Justin's Marks" or "Justin's Registrations."

**<u>HCTB'S BRIDAL BOUTIQUE BUSINESS</u>**

29. HCTB operates a bridal boutique store in San Diego.

30. HCTB claims on its website: "For over 35 years, Here Comes the Bride & Groom has been San Diego's trusted bridal destination. Our intimate Hillcrest boutique specializes in designer wedding dresses, expert alterations, bridal accessories, plus size bridal gowns, and tuxedo and suit rentals—all within a personalized, appointment-only experience. From finding your dream gown to ensuring it fits flawlessly, our experienced team provides dedicated one-on-one service to make your wedding vision a reality."

31. Martinez operates HCTB's bridal store in San Diego. Martinez oversees HCTB's procurement of dresses ordered by brides.

**THE HCTB DEFENDANTS SOLD COUNTERFEIT DRESSES**

32. On August 4, 2025, the HCTB Defendants showed JG an authentic Justin gown – the Jordan Satin A-Line Gown (the "*Jordan Gown*").

33. The sample *Jordan Gown* had the authentic Justin labeling intact as shown below:






34. JG told the HCTB Defendants that she wished to buy the *Jordan Gown* in her size but modified to include straps.

35. The HCTB Defendants represented that within six months Justin would deliver to HCTB an authentic *Jordan Gown* in her size with the requested alterations.

36. On August 4, 2025, JG paid $2,385 to HCTB for the purchase of an authentic *Jordan Gown*.

37. Eight months later, the HCTB Defendants told JG her authentic *Jordan Gown* had arrived at the store, and she could pick it up. However, JG noticed that the gown was strapless despite the HCTB Defendants' representation that the dress would arrive pre-modified directly from the designer. HCTB assured its seamstress would perform the modification.

38. As JG reported to Justin:

> A few days later, they called me to explain that the dress they had originally sent was the wrong one—that the designer had indeed produced my specific dress and would be shipping it out immediately. They scheduled an appointment for me, but when I arrived for that appointment, the dress was in pieces: it had no zipper, the decorative appliqués were merely being held in the seamstress's hand, and there were a thousand other details that seemed very strange to me. They spent the entire day fitting the dress to make sure it fit correctly, but I find it hard to believe that a designer brand would send an unfinished dress. In addition to that, the dress did not feel like the same quality as when I tried it on the first time, the fabric felt different, even the color. I mentioned this to them but they told me that at the other location where I tried it on the first time there was different lighting, and that it was impossible for it to be another color because that dress was only made in one color.

39. Justin's inspection of the Counterfeit Gown delivered to JG differed from an authentic *Jordan Gown* in the following respects:

- Labeling – All labeling is entirely absent, including the woven brand label, care label, and country of origin label – none of which are present on the Counterfeit Gown.
- Branded Elements – No Justin branded elements are present whatsoever – including hanger loops, woven label, and care label.
- Fabric & Lace – The fabric and lace used in the Counterfeit Gown are incorrect – both are of a quality and composition inconsistent with Justin's genuine product for this style.
- Boning & Structure – The boning and internal structure of the Counterfeit Gown are incorrect; the bust cup is improperly constructed and the garment contains less boning than is standard in Justin's genuine dresses.
- Construction – The seam finishing and zipper are not consistent with Justin's manufacturing standards, and the garment lacks the button loops that are standard on all genuine Justin dresses.
- Pockets – The Counterfeit Gown's pocket lining is satin while Justin's genuine gowns of this style feature organza pockets.

40. In June 2026, a second bride ("DL") reported that HCTB verbally told her it was selling her an authentic *JESSA Gown* designed and manufactured by Justin. DL tried on an authentic *Jessa Gown* at HCTB. DL's sales receipt reflected the sale of the *Jessa Gown* but did not mention Justin as the designer.

41. Despite ordering her dress in November, HCTB delivered her dress to her seven to eight months later. HCTB delivered the dress so close to her wedding date that DL was unable to take any action with respect to the dress until after her wedding.

42. The HCTB Defendants delivered to DL a dress that had no labels or tags whatsoever, naming the gown's designer. DL reported that the gown she received had a fabric of a lower quality and had different lace details. Justin inspected DL's gown and confirmed it was a Counterfeit. Justin did not sell or deliver this dress, and it was not a *Jessa Gown*.

43. In June 2026, a third bride reported that HCTB misrepresented that it had ordered a dress for her from Justin. HCTB lied to the bride by stating that her dress was in Justin's warehouse in New Jersey and HCTB had been trying unsuccessfully to contact Justin about the delivery of the gown. This story was a fabrication because Justin did not order any dresses for HCTB.

**THE HCTB DEFENDANTS CONTINUE TO WILLFULLY INFRINGE.**

44. On May 27, 2026, Justin sent the HCTB Defendants a cease and desist letter via email and certified mail.

45. On June 12, 2026, Justin's counsel sent a letter warning of the HCTB Defendants' liability for trademark infringement and counterfeiting.

46. On June 24, 2026, Justin sent a buyer into HCTB's store to investigate whether HCTB continued to sell Counterfeit Dresses ("Buyer").

47. When in the store, the HCTB Defendants showed the Buyer an authentic sample of Justin's top selling dress, the *Josette Gown*.

48. However, the HCTB Defendants had removed all labels from the *Josette Gown*.

49. The HCTB Defendants misrepresented that the *Josette Gown* was their "private label" dress (the "Passed Off Dress").

50. The HCTB Defendants told the Buyer that they could sell her the store sample for a cheaper price or buy a new and authentic gown for her at a higher price.

51. For the next two months, the HCTB Defendants, via text messages sent across state lines, solicited the Buyer to buy the Passed Off Dress.

52. However, the Buyer confirmed that the HCTB Defendants continue to display other "samples" of Justin's authentic dresses with Justin's trademarks visible on the hanger strap.

53. HCTB never ordered the Jordan (style 88425), Jessa (style 88405), or Josette (style 88406) gowns from Justin, whether as samples or otherwise.

54. Thus, HCTB obtained samples of Justin's dresses from other sources and displayed them in its store to deceive brides into believing that: i) Justin authorized HCTB to sell Justin's dresses and ii) that HCTB would deliver Justin's original and authentic dresses instead of the inferior knockoffs sold by HCTB.

**<u>HCTB's Social Media Accounts Infringe Justin's Trademarks</u>**

55. HCTB operates social media accounts with Facebook, TikTok and Instagram to promote its business.

56. HCTB's Instagram account has 1,130 followers.

57. To facilitate its sale of Counterfeit Dresses, HCTB's Instagram account published two of Justin's famous product images of models wearing Justin's gowns (collectively, "Justin's Images").

*See* Exhibits 4-5. HCTB did so as part of a bait-and-switch fraud in which it lured in customers seeking Justin's high-quality and famous gowns only to sell them Counterfeits or Passed Off Dresses.

58. Justin's website (https://justinalexander.com/fr/sincerity-bridal/wedding-dresses/44047/) displays product images of models wearing Style 44047, "a Mermaid dress with a sweetheart neckline in satin and layers of tulle" ("Mermaid Dress") as set forth below:




59. HCTB's displayed the same image of the Mermaid Dress in its Instagram Account:




60. HCTB falsely claims an authorization to sell authentic Mermaid Dresses designed and manufactured by Justin through its use of the following hashtags alongside its display of the Mermaid Dress: #jabride and #justinalexanderbridal.

61. Justin's website (https://justinalexander.com/lillian-west/wedding-dresses/66192PS/) displays product images of models wearing Lillian West style 66192PS – a "Long Sleeve Plus Size A-Line Gown with V-Neckline" ("Plus Gown") as set forth below:




62. HCTB displays the same product image of the PS Gown in its Instagram account:



63. As set forth in Exhibit 6, HCTB used Justin's trademarks in hashtags in four other posts to its Instagram Account.

64. HCTB published Justin's product images and trademarks in its Instagram Account to falsely claim to customers that it was affiliated with Justin Alexander and sold its authentic dresses.

**<u>Defendants Refused to Identify Their Suppliers (the John Doe Defendants).</u>**

65. Martinez orchestrated the sale of the Counterfeit Dress(es).

66. Martinez misrepresented that HCTB was selling an authentic dress when Martinez knew she had obtained a Counterfeit Dress.

67. Martinez is personally liable for the HCTB Defendants' counterfeiting and trademark infringement because she directed and perpetrated the unlawful conduct.

68. The HCTB Defendants refused to tell Justin the number of counterfeit dresses it sold.

69. The HCTB Defendants refused to name the John Doe Defendants supplying the counterfeit dresses to HCTB and other boutique stores or ecommerce sellers.

70. Upon information and belief, the John Doe Defendants responsible for the sourcing and manufacturing of the Counterfeit Dress have sourced and manufactured knock-off and counterfeit dresses sold by other bridal boutiques and online retailers.

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114-1117]**

71. Plaintiff realleges and incorporates by reference each of the above allegations as if more fully set forth herein.

72. Plaintiff is the exclusive owner of all rights and title to the Justin Marks.

73. Plaintiff has continuously used the Justin Marks in interstate commerce since on or before the date of first use as reflected in the Registrations of the Justin Marks.

74. Defendants intentionally reproduced, copied and/or imitated the Justin Marks and/or used spurious designations that are identical with, or substantially indistinguishable from the Justin Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of the Counterfeit Products.

75. Defendants have used in commerce marks that are identical to, or substantially indistinguishable from, the federally registered Justin Marks, in connection with goods falling within the scope of Justin's federal registrations.

76. Defendants engaged in the above-described conduct without Justin's authorization or consent.

77. Defendants engaged in the above-described conduct with knowledge of Plaintiff's well-known and prior rights in the Justin Marks.

78. Defendants have applied their counterfeit marks to promotions and/or advertisements intended to be used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promotion, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants origin from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

79. Defendants' unauthorized use of Justin's Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff and with deliberate intent to unfairly benefit from the enormous goodwill inherent in Justin's Marks.

80. Defendants' actions constitute willful counterfeiting of the Justin's Marks in violation of 15 U.S.C. §§ 1114(1)(a) - (b), 1116(d) and 1117(b)-(c).

81. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial financial loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to Justin's Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Justin's Marks.

82. Accordingly, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Trademark Infringement in Violation of §32(a) of the Lanham Act)**
**[15 U.S.C. § 1114]**

83. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84. Plaintiff has continuously used Justin's Marks in interstate commerce since on or before 2011.

85. Plaintiff owns all right, title and interest in the Justin Marks and therefore has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

86. Defendants knew that Plaintiff owned all rights in and to the Justin Marks when Defendants engaged in their unlawful and infringing actions as described herein.

87. Plaintiff's registration of Justin's Marks on the United States Patent and Trademark Office's principal register presents conclusive evidence that Justin has the exclusive right to use its Justin's Marks in and throughout the United States in connection with its claimed goods.

88. Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Justin's Marks and/or which are identical or confusingly similar to Justin's Marks.

89. Without Plaintiff's consent, Defendants have used and are using, in connection with the sale, offering for sale, distribution, and or advertising of the Counterfeit Products, marks that are reproductions, counterfeits, copies and/or colorable imitations of Justin's Marks and/or which are identical or confusingly similar to Justin's Marks.

90. Defendants' egregious and intentional use of Justin's Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing the Defendants' Counterfeit Products are Plaintiff's products or are otherwise associated with, or authorized by, Plaintiff.

91. Defendants continued, knowing and intentional use of Justin's Marks without Plaintiff's authorization constitutes intentional infringement of Plaintiff's federally registered trademark in violation of 15 U.S.C. § 1114.

92. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial financial loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to Justin's Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Justin's Marks.

93. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover up to treble the amount of Defendants' unlawful profits and Plaintiff's damages and an award of attorneys' fees under 15 U.S.C. § 1117.

94. The Defendants' wrongful acts will continue unless and until enjoined by this Court.

95. The Defendants' acts have caused and will continue to cause irreparable and economic injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.

96. Plaintiff's immediate, irreparable injuries have no remedy at law, and Plaintiff is entitled to injunctive relief and up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Plaintiff's reasonable attorney fees under 15 U.S.C. §§ 1116-1117.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin and Unfair Competition In Violation of Section 43(a) of the Lanham Act)**
**[15 U.S.C. §1125(a)]**

97. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

98. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides, in relevant part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(B) in

> commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

99. Justin's Marks are inherently distinctive and/or have acquired distinctiveness.

100. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

101. Defendants' unauthorized use in commerce of Justin's Marks falsely designates the origin or association of Defendants' products with Justin Alexander. Such use will inevitably cause consumer confusion or mistake and will deceive the consuming public into believing that there exists an affiliation, connection, or association between Defendants and Justin Alexander as to the origin, sponsorship, or approval of Defendants' products. Such conduct constitutes false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125.

102. Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Justin Alexander's business, reputation, and goodwill in Justin Alexander's Trademarks, for which Justin Alexander has no adequate remedy at law.

103. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of Plaintiff's marks in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

104. The Defendants' wrongful acts will continue unless and until enjoined by this Court.

105. The Defendants' acts have caused and will continue to cause irreparable and economic injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.

106. Plaintiff's immediate, irreparable injuries have no remedy at law, and Plaintiff is entitled to injunctive relief and up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Plaintiff's reasonable attorney fees under 15 U.S.C. §§ 1116-1117.

**FOURTH CAUSE OF ACTION**
**FALSE ADVERTISING IN VIOLATION OF SECTION 43(a) OF THE LANHAM ACT**

107. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

108. Defendants have made false and misleading statements of fact about the dresses that the Defendants sell.

109. Defendants misrepresented that they were authorized retailers of Justin Alexander dresses, including through HCTB's Instagram Account and in direct solicitations to consumers.

110. Defendants misrepresented to consumers that the fake, knock-off Counterfeit Dresses sold were Justin's authentic gowns.

111. Additionally, Defendants misrepresented that they designed and manufactured their own high quality wedding gowns which they sold under their own private label. Instead, Defendants passed off samples of Justin's dresses, with the labels removed, as Defendants' own private label dresses. Defendants then sold dresses that were inferior to the store samples to consumers.

112. These statements misrepresented the nature, characteristics, and or qualities of the dresses sold by Defendants and are expressly false, impliedly false, or both.

113. Defendants knew or should have known that their advertising activities were false, misleading and deceptive.

114. Defendants' false and misleading statements have deceived and have the tendency to deceive a substantial segment of their intended audience about matters material to purchasing decisions.

115. Defendants' violations have caused harm to the public and, unless restrained, will further damage the public.

116. Defendants sell their dresses in interstate commerce to consumers in the United States, and each of the Defendants has participated in these sales.

117. Defendants' false and misleading statements were and are made in commercial advertising and promotion in interstate commerce to consumers in the United States.

118. Defendants' violations have harmed Plaintiff. As a result of Defendants' violations, Plaintiff has suffered and will continue to suffer damage to its business and goodwill.

119. Plaintiff has and will lose sales and profits and incur increased advertising and marketing costs.

120. Plaintiff's immediate, irreparable injuries have no remedy at law, and Plaintiff is entitled to injunctive relief and up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Plaintiff's reasonable attorney fees under 15 U.S.C. §§1116-1117.

**FIFTH CAUSE OF ACTION**
**(Contributory and Vicarious Trademark Infringement)**

121. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

122. To the extent that any of the Defendants are not directly liable for the above-described violations of the Lanham Act, then each Defendant is vicariously and/or contributorily liable for the infringement.

123. The Defendants are contributorily liable for the trademark infringement and counterfeiting because the Defendants had knowledge of the infringement, or were willfully blind to it while enabling it to occur.

124. Vicarious liability for trademark infringement arises when the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.

125. Defendants' violations have harmed Plaintiff. As a result of Defendants' violations, Plaintiff has suffered and will continue to suffer damage to its business and goodwill.

126. Plaintiff's immediate, irreparable injuries have no remedy at law, and Plaintiff is entitled to injunctive relief and up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Plaintiff's reasonable attorney fees.

**SIXTH CAUSE OF ACTION**
**(Unfair Competition)**

127. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

128. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as Plaintiff's Products sold and offered for sale by Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

129. By misappropriating and using the Plaintiff's Marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

130. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the

Counterfeit Products were created, authorized or approved by Plaintiff, all to Defendants' profit and to Plaintiff's great damage and injury.

131. Defendants have traded off the extensive goodwill of Plaintiff to induce customers to purchase the Counterfeit Products thereby directly competing with Plaintiff.

132. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

133. Defendants shall be liable to Plaintiff for all damages, directly or indirectly caused by Defendants' unfair competition.

**SEVENTH CAUSE OF ACTION**
**STATUTORY UNFAIR COMPETITION**
**(BUS. & PROF. CODE § 17200)**

134. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

135. California Business and Professions Code section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business act or practice.

136. Defendants' unauthorized use of Plaintiff's sample dresses to induce consumers to purchase knock-off dresses (which are misrepresented to be Plaintiff's authentic products) constitutes a fraudulent and unfair business practice because it is likely to deceive the public and cause consumer confusion regarding the source or sponsorship of the products.

137. Defendants' actions also constitute an unlawful business practice to the extent they violate common law trademark protections and unfair competition principles.

138. As a result of Defendants' unlawful, unfair, and fraudulent practices, Defendants have obtained, and continue to obtain, ill-gotten profits and money that rightfully belong to Plaintiff.

139. Plaintiff has suffered an injury in fact and has lost money or property as a direct result of Defendants' unfair practices, thereby establishing standing to seek restitution and permanent injunctive relief under Business and Professions Code section 17203.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

(i) using the Plaintiff's marks or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's marks in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of the Plaintiff;

(ii) passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff;

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing Plaintiff's marks and damaging Plaintiff's goodwill;

(v) competing unfairly with Plaintiff in any manner; or

(vi) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory

not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear Justin's Mark or any reproductions, counterfeit copies, or colorable imitations thereof.

2. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

3. That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4. In the alternative, that Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) per counterfeit mark per type of goods sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c)(2);

5. That Defendants be ordered to deliver up for destruction all products, labels, signs, packages, and advertisements bearing Plaintiff's marks or any colorable imitation thereof, pursuant to 15 U.S.C. § 1118;

6. That Defendants be required to identify all suppliers, manufacturers, and intermediaries from whom they obtained any dress represented or displayed as a Justin Alexander product, together with the quantities obtained and sold;

7. For Plaintiff's reasonable attorneys' fees;

8. For all costs of suit; and

9. For such other and further relief as the Court may deem just and equitable.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury in this action for all issues so triable.

Dated: November 11, 2026

Respectfully submitted,

**KAGEN CASPERSEN & BOGART PLLC**

By: /s/ Stuart Kagen
Stuart Kagen (CA Bar No. 212017)
Russell Bogart (*pro hac vice application forthcoming*)
551 Madison Avenue, 12th Fl.
New York, New York 10022
Tel: (212) 880-2045
Fax: (646) 304-7879
skagen@kcbfirm.com
rbogart@kcbfirm.com
*Attorneys for Plaintiff Justin Alexander, Inc.*

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Justin Alexander's United States Registration for the word mark JUSTIN ALEXANDER for use with wedding dresses and wedding gowns, Trademark Registration Number 4018784. |
| 2 | Justin Alexander's United States Registration for the word mark SINCERITY for use with wedding dresses and wedding gowns, Trademark Registration Number 4011847. |
| 3 | Justin Alexander's United States Registration for the word mark LILLIAN WEST, Trademark Registration Number 4417935. |
| 4 | Side-by-side comparison of HCTB publishing on its Instagram (https://www.instagram.com/p/C7Hgn9IL1aN/) Justin's product image displayed on its website |
| 5 | Side-by-side comparison of HCTB publishing on its Instagram https://www.instagram.com/p/C8cOZdLJpaz/ with Justin's product image displayed on its website. |
| 6 | Screenshots of HCTB using Justin's trademarks as hashtags in its Instagram advertising |